UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES MCFARLAND,　　　　　　　　　　Case No. 1:08-cv-789

　　　　Plaintiff,　　　　　　　　　　　　Dlott, J.
　　　　　　　　　　　　　　　　　　　　Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 18-32) (ALJ's decision)).

**I.**

Plaintiff filed applications for benefits on January 7, 2005, alleging disability commencing December 18, 2004 commencing December 18, 2004 due primarily to back pain, as well as a heart condition (aortic stenosis), and depression. (Tr. 56, 95, 477, 502-510). The onset date was later amended to May 1, 2005. His application was denied initially and on reconsideration.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Plaintiff then requested a hearing *de novo* before an ALJ.  An evidentiary hearing, at which Plaintiff was represented by counsel, was held on October 1, 2007 (Tr. 497-524).

On April 25, 2008, the ALJ issued a decision denying Plaintiff's claim.  That decision stands as Defendant's final determination consequent to denial of review by the Appeals Council on September 19, 2008.  (Tr. 7-10).

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since May 1, 2005, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*)

3. The claimant has the following "severe" impairments: residuals of aortic valve replacement surgery he underwent in October 2006, left ventricular hypertrophy with normal left ventricular systolic function and normal ejection fraction, lumbar and cervical disc disease, and situational anxiety / depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift ten pounds frequently, twenty pounds occasionally, and to sit six hours a day, stand for four hours per day, and walk for one hour per day.  He is also limited to only occasional pushing/pulling, overhead reaching, and operation of foot controls with his right lower extremity.  He should not stoop, crouch, and kneel more than on a frequent bases.  He is also limited to inside work in

2

> temperature-controlled environments and cannot work in environments where he would be exposed to vibrations or perform tasks involving the use of vibrating tools. Due to his anxiety and depression, he is also limited to performing low-stress jobs which do not involve interpersonal contact with members of the general public, fast-paced work, or strict production quotas.
>
> 6. The claimant is unable to perform any past relevant work.(20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on September 6, 1959 and is forty eight years old which classifies him as a younger individual at all times relevant to this case (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564 and 416. 964).
>
> 9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferrable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2.)
>
> 10. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 1560(c), 404.1566, 416.960(c) and 416.966.)
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920 (g)).

(Tr. 22-31).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI benefits.

On appeal, Plaintiff maintains that: (1) the ALJ erred in failing to find that Plaintiff's impairments met or medically equaled Listing 1.04A; (2) the ALJ erred in weighing the treating physician's opinions; and (3) the ALJ erred in evaluating Plaintiff's pain, credibility, and subjective complaints. Each assertion will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the

4

claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform his past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.*, No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

Plaintiff argues first that the ALJ erred in failing to find that Plaintiff met the requirements of Listing 1.04A. Plaintiff further asserts that the ALJ failed to adequately explain why Plaintiff did not meet the Listing. The undersigned agrees.

To meet a Listing, a claimant must meet all of the Listing's elements. 20 C.F.R. § 404.1525(d); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Section 1.04A of the Listings requires:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A (italics in original).

The ALJ found that Plaintiff did not meet Listing 1.04A in part because he did not have the requisite evidence of nerve root compression. (Tr. 24–25). <u>However, the Commissioner concedes that this was error</u>, as two MRIs clearly evidenced nerve root compression. (Tr. 147, 318).

Nonetheless, the Commissioner asserts that the error was harmless, and "[e]ven in a close case . . . the ALJ's findings of fact should not be disturbed unless we are persuaded that his findings are legally insufficient." *Dorton v. Heckler*, 789 F.2d 363,

6

367 (6th Cir. 1986). Thus, the Commissioner argues that the ALJ's decision is supported by substantial evidence because the ALJ also noted many other findings that did not support a finding of disability under Listing 1.04A. The undersigned finds, however, that the Commissioner's argument is unavailing.

Here, two MRIs clearly evidenced nerve root compression. Moreover, Dr. West's examination showed limited spinal motion, difficulty standing on the toes of the right foot, absent ankle reflex, and sensory deficits in the right posterior and medial calf area. Accordingly, Dr. West diagnosed lumbar radiculopathy. (Tr. 150). Dr. West further confirmed that Plaintiff's pain was in a neuro-anatomic distribution and found straight leg raising was positive on the right at 30º and on the left at 60º. (Tr. 151, 232-233).

Rather than accepting Dr. West's interpretation of his own test results, the ALJ claimed that Dr. West's examination showed only "very minor sensory and reflex deficits" and that straight leg raising was "somewhat positive." (Tr. 25). However, the ALJ does not cite to any evidence to suggest that Dr. West's results were only "minor" or "nominal." (Tr. 25). Moreover, Dr. West did not describe his findings as such.

In support of his determination that Plaintiff does not meet or medically equal the Listing 1.04A , the ALJ cites to the opinion of Dr. Ray, who evaluated Plaintiff at the State agency's request in July 2007. The ALJ acknowledged that Dr. Ray also found evidence of motor strength deficits and sensory deficits, but claimed that these were only "nominal." (Tr. 25). Thus the ALJ posited that: "The claimant instead complained of primarily mechanical back pain without a significant neurological component." (Tr. 25).

Plaintiff argues that the ALJ fails to cite to the record to support his interpretation

7

of Dr. Ray's report. Instead, the record reflects that Plaintiff reported to Dr. Ray that he had low back pain that radiated down his right leg into his right foot with associated numbness. (Tr. 256). Examination showed a mild right antalgic gait and there was a decreased sensation to touch. (Tr. 257). Dr. Ray could not elicit a deep tendon reflex at the ankle either. (Tr. 258). Nowhere did Dr. Ray characterize Plaintiff's pain as "mechanical back pain." Rather, Dr. Ray diagnosed a multilevel spondylosis and acknowledged that there was a possible right L5 radiculitis. (Tr. 258).

Thus, the undersigned agrees with Plaintiff that in reaching his conclusions concerning the Listings, the ALJ essentially substituted his own lay opinion for that of the medical expert. While the ALJ may have expertise in some matters, he does not supplant the medical expert. *Hall v. Celebreeze*, 314 F.2d 686,690 (6th Cir. 1963). "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.2d 863, 870 (7th Cir. 2000); *see Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir. 1999)("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion").

Furthermore, although the Commissioner asserts that Dr. West and the state agency physicians did not report muscle atrophy, as required by Listing 1.04A, (Tr. 127, 150, 232, 260), the ALJ failed to reach such a finding because he ended his analysis after he improperly determined that the evidence did not show that Plaintiff suffered from a nerve root compression. (Tr. 25). Additionally, although Dr. West noted that "there is no evidence of atrophy in of the upper extremities," he also found that Plaintiff suffered from

8

motor loss and noted that he had "weakness in ability to stand on toes in right foot." (Tr. 127).

Accordingly, despite the Commissioner's assertion that the ALJ's nerve root compression finding was harmless error, and that there is no evidence of muscle atrophy, based on the above-referenced evidence, the undersigned finds that further fact-finding is necessary to make this determination. A reversal and remand, under sentence four, is thus appropriate. *See Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

**B.**

Plaintiff argues next that the ALJ erred in evaluating the opinions of Plaintiff's treating physicians   The undersigned agrees.

It is well settled that the opinions of treating physicians are generally given substantial, if not controlling, deference. 20 C.F.R. § 404.1527(d)(2) (2004); *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Roush v. Barnhart*, 326 F.Supp. 2d 858, 862 (S.D. Ohio 2004)). The SSA promulgated this regulation in 1991 because:

> these sources are likely to be the medical professional most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting from 20 C.F.R. § 404.1527(d)(2)). Although the weight given to a treating physician's opinion on

9

the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record (*see* 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)), a summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file).

If not contradicted by substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435; *see also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992).

If a treating physician's opinion is contradicted by substantial evidence, the opinion is not to be dismissed, and it is still entitled to deference. *Roush*, 326 F.Supp. 2d at 862. In weighing the various opinions and medical evidence, the ALJ must consider pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6).

Should the ALJ reject a treating physician's opinion, the ALJ must "give good reasons" for not giving weight to that opinion in the context of a disability determination. *Wilson*, 378 F.3d at 544. A ruling issued by the SSA explains that, pursuant to 20 C.F.R. § 440.1527(d)(2), a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (1996); *see also Wilson*, 378 F.3d at 544.

Here, Plaintiff was seen by Dr. Koles, his family physician, in June 2005 because of his increasingly severe chronic back pain. He noted that the pain continued to radiate into his right lower extremity with numbness in his foot. (Tr. 144). In December 2005, Planitiff underwent an MRI of the lumbar spine. The un-enhanced MRI showed spondylolytic changes at multiple levels with the greatest amount of foraminal stenosis and nerve root impingement noted at the L5 level. (Tr. 147). There was broad-base posterior disc bulge with hypertrophy at the facets in the ligamentum flavum. There was L5 nerve root compression. Dr. Koles also noted degenerative changes within the facet joints. (Tr. 147).

Dr. Koles referred Plaintiff to a neurosurgeon, Scott West, D.O. (Tr. 145). Plaintiff saw Dr. West on January 4, 2006. (Tr. 149-150). On examination, Dr. West noted that there was tenderness to palpation of the lumbar spine. Range of motion of the lumbar spine showed flexion limited to 15 degrees, and side bending limited to 30 degrees to the left and 15 degrees to the right. Plaintiff was able to stand on his heels and toes but had some difficulty standing on the toes of his right foot. Deep tendon reflexes were absent at the ankle on the right. There were sensory deficits in the right posterior and medial calf area. Straight leg raising was positive on the right at 30 degrees. Dr. West reviewed the lumbar MRI from December 2005, which he noted showed disc bulge and foraminal stenosis on the right side at L5-S1. He diagnosed lumbar radiculopathy.

11

Following his examination of Plaintiff in January 2006, Dr. West completed a Basic Medical form concerning Plaintiff's ability to function. (Tr. 151-52). Based on his examination, Dr. West did not think that Plaintiff should stand or walk for more than two hours in an eight-hour day and for only twenty minutes at a time. Dr. West also noted that Plaintiff's ability to sit was limited to two hours a day and for only twenty minutes at a time. Dr. West did not think Plaintiff could lift more than ten pounds. He noted that Mr. McFarland was extremely limited in his ability to push/pull and bend. Plaintiff was also markedly limited in his ability to reach, handle, and perform repetitive foot movements. (Tr. 152).

Dr. Kole also completed a Basic Medical form on February 23, 2006. He indicated that Plaintiff's ability to walk and stand was limited to one hour in an eight-hour workday, and for only ten minutes at a time. He thought Plaintiff could sit for four hours, but only for one half hour at a time. Dr. Koles indicated that Plaintiff could only lift up to five pounds frequently and ten pounds occasionally. Dr. Koles opined that Plaintiff was markedly limited in his ability to push/pull, bend, and perform repetitive foot movements. (Tr. 201).

The ALJ, however, found Plaintiff capable of performing a limited range of light work based on the finding of Dr. Ray, a state agency physician who performed a consultative examination of Plaintiff in July 2007. (Tr. 256-68). The ALJ discounted the opinions of Dr. West and Dr. Koles stating that their functional limitations were:

> inconsistent with the claimant's demonstrated level of day to day activity.

> Throughout the development of this case, he has lived alone and has been able to perform all household chores necessary for him to live independent. There is no medical basis to conclude that he could only be out of bed a total of five hours per day.

(Tr. 27).

Plaintiff maintains that the ALJ erred in his selective reliance on Plaintiff's daily activities and that his activities of daily living were more limited than found by the ALJ.

The undersigned agrees that Plaintiff's ability to engage in daily activities does not establish *ipso facto* that he is able to engage in gainful activity 40 hours per week. The ALJ erred by selectively relying on Plaintiff's testimony regarding his daily activities. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.") It is well recognized that a claimant's ability to perform limited and sporadic tasks does not mean that he is capable of full-time employment. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004); *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001).

Moreover, as asserted by Plaintiff, notably absent from the ALJ's analysis is any consideration of whether the objective medical findings, such as seen on MRI, supported the conclusions of Dr. West and Koles. (*See generally* Tr. 26-28). As noted above, the MRI's in 2005 and 2007 showed a broad-based posterior disc bulge/herniation with L5

13

nerve root compression, along with degenerative changes at multiple levels of the lumbar spine. (Tr. 147, 317).

The ALJ's conclusory statements lack merit and fail to meet the requirement that the ALJ "give good reasons" for not giving weight to a treating physician. *See Wilson,* 378 F.3d at 545. Furthermore, as noted above, in weighing the various opinions and medical evidence, the ALJ must consider pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Here, however, it is unclear from the ALJ's decision whether he applied any or all of such factors, in light of his selective reliance on Plaintiff's daily activities.

Accordingly, the undersigned finds that this matter should be remanded for further fact finding in order that the ALJ be afforded an opportunity to provide a proper explanation of the reasons for the weight assigned to each treating source.

## C.

As his last assignment of error, Plaintiff maintains that the ALJ erred in evaluating Plaintiff's pain, credibility, and subjective complaints. Plaintiff argues that the ALJ's analysis of pain seemed to center on the fact that Plaintiff "lives alone and is able to function independently." (Tr. 29). The ALJ opined that Plaintiff "attempted to portray himself as leading a rather limited sedentary existence," but the ALJ concluded that "such lifestyle must be considered a matter of choice not the result of his impairments." (*Id.*)

As noted above, Plaintiff's ability to engage in daily activities does not establish *ipso facto* that he is able to engage in gainful activity 40 hours per week.

Moreover, when considering a claim for disability based on pain, the Court is guided by the Sixth Circuit's instruction that, initially, there must be objective evidence of an underlying medical condition. *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). SSR 96-7p establishes a two step process for evaluating the claimant's testimony and statements about symptoms such as pain, fatigue or weakness.

First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. If not, the symptoms cannot be found to affect the claimant's ability to do basic work activities. SSR 96-7p.

Second, if an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must

evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit his ability to work. If the claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p.

The "ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995). Rather, this is but one factor to consider, along with the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; any measures the claimant has used to relieve the pain or other symptoms; and functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7p.

Here, as detailed above, the record contains objective medical evidence of an underlying back impairment that could produce disabling pain (*i.e.,* a herniated disc that compresses the nerve root at L5, reduced joint motion, and sensory and motor disruption). (Tr. 147, 150, 257, 317).

Accordingly, there is insufficient evidence in the record to support the ALJ's findings as to credibility, and further-fact finding is necessary in order to properly evaluate Plaintiff's pain credibility and subjective complaints pursuant to SSR 96-7p.

**III.**

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (quoting *Willis v. Secretary of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984).

It is therefore **RECOMMENDED** that the ALJ's non-disability finding be **REVERSED,** and this matter **REMANDED** to the ALJ under the **FOURTH SENTENCE** of 42 U.S.C. §405(g). The undersigned **FURTHER RECOMMENDS** that, on remand, the ALJ be instructed to: (1) determine anew whether or not Plaintiff meets or equals the elements of Listing 1.04(A); (2) properly weigh the medical evidence and give specific reasons for the weight given to a treating source's medical opinion as required by 20 C.F.R. § 404.1527(d)(2)-(6); and (3) fully discuss and apply the factors for evaluating credibility set forth in Social Security Ruling 96-7p.

**IT IS SO RECOMMENDED.**

Date:   December 10, 2009                                         s/Timothy S. Black
                                                                   Timothy S. Black
                                                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES MCFARLAND,            Case No. 1:08-cv-789

    Plaintiff,                  Dlott, J.
                                  Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

       Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).